LAWRENCE E. DAVID, APPELLEE, V. EDITH DeLEON,
APPELLANT.

547 N.W.2d 726

Filed May 24, 1996.   No. S-94-416.

Waldine H. Olson and Christopher D. Curzon, of Schmid, Mooney & Frederick, P.C., for appellant.

Richard J. Rensch, of Raynor, Rensch & Pfeiffer, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

This is an appeal from a jury verdict awarding the plaintiff, Lawrence E. David, damages for injuries sustained in a motor vehicle collision. Edith DeLeon, the defendant, alleges that she was prejudiced by the trial court's refusal to give a tendered jury instruction. We disagree and affirm.

The facts of the collision are not disputed. On May 1, 1988, DeLeon ran a stop sign at the intersection of 29th Street and St. Mary's Avenue in Omaha and struck broadside a vehicle driven by David. DeLeon contested liability through trial. The trial court directed a verdict on the issue of liability in favor of David and submitted the issue of damages to the jury. The jury returned a verdict awarding David $45,571.74. DeLeon has not assigned error to the order directing a verdict on liability, nor has she claimed that the damages awarded were excessive. DeLeon's sole assignment of error concerns the trial court's instruction to the jury regarding David's preexisting physical condition. Prior to the collision, David had suffered from mild generalized arthritis in his back and knees.

Certain damages claimed by David were immediately visible from the moment of the collision: David lost consciousness, sustained a concussion, and had no memory of the accident. He also suffered a fractured rib and multiple contusions to his head, ear, shoulder, and left knee, as well as a hematoma of the scalp. David was hospitalized for 2 days for these injuries.

After his hospitalization, David sought and received treatment from several physicians for a number of collision-related maladies. From May 2 through June 1, 1988, David was treated by a surgeon, Dr. Lewis Hanisch, for the concussion and hematoma. Dr. Hanisch also ordered x rays of two separate views of David's chest on May 10 to compare with the chest and spine x rays taken on the date of the accident.

David sought and received treatment for his knees in June and October 1988 from Dr. John Hurley, a rheumatologist who had treated David's arthritis since December 1987. In

June, Dr. Hurley noted effusion of David's left knee, aspirated the knee, and injected steroids. David returned to Dr. Hurley in October 1988 for further treatment of the injured left knee; Dr. Hurley again injected the knee with steroids.

In July 1991, David sought diagnosis and treatment from a neurologist, Dr. Joel Cotton, for neck pain experienced since the collision. Prior to the collision, David had not experienced significant neck pain, despite the presence of mild arthritis up and down his back. At Dr. Cotton's request, David underwent an MRI on July 17 and then returned to Dr. Cotton's office on July 22. At DeLeon's request, David saw Dr. Michael O'Neil on March 30, 1993, for an independent medical examination. David also saw an orthopedist, Dr. Michael Morrison, on October 1, 1991.

David's injuries, as diagnosed by the physicians, fell into three categories: aggravation of his preexisting knee condition, aggravation of cervical spine disease, and numbness and tingling in his feet. David admits his preexisting arthritic condition and spinal stenosis, and he further admits that each of those conditions can be naturally degenerative over time even in the absence of trauma. The question posed of each expert was to what extent David's current physical maladies could be causally related to the collision.

With respect to David's left knee injuries, each expert testified that the trauma of the collision aggravated David's preexisting arthritic condition. Dr. Hurley, the first physician to treat David's left knee following the collision, noted David's "long history of generalized osteoarthritis" but testified that David's left knee pain "was certainly aggravated by his motor vehicle accident." Dr. Cotton noted that while David had a preexisting condition of spinal stenosis, that condition was asymptomatic in David's legs before the trauma of the collision caused that condition to flare up. Dr. O'Neil, the independent medical examiner, opined that "the knee complaints were aggravation of his pre-existing degenerative arthritis documented in Dr. Hurley's medical records," although he could not state with reasonable medical certainty what percentage of the knee complaints were caused by the collision trauma.

The experts found some common ground on the issue of David's cervical spine complaints. Dr. Cotton opined that David sustained cervical spine injuries in the collision and that those injuries were superimposed over David's preexisting condition of arthritis. Specifically, Dr. Cotton diagnosed an unusually rapid degeneration of David's neck structure from its preexisting condition and causally related this rapid degeneration to the collision. Similarly, Dr. O'Neil was of the opinion, with reasonable medical certainty, that David sustained injuries to his cervical spine and agreed that those injuries were superimposed over his preexisting condition to cause "an aggravation of his pre-existing degenerative arthritis." Dr. O'Neil further agreed that David's impairment rating was causally related to the auto accident. Dr. O'Neil's findings were in part predicated on the diagnosis of Dr. Morrison that the collision aggravated David's preexisting condition.

It was only on the issue of David's tingling feet that the experts disagreed as to whether a causal link existed. Whereas Dr. O'Neil opined that the tingling was a natural progression of preexisting spinal stenosis, Dr. Cotton noted that David had not experienced tingling or any other symptoms of spinal stenosis prior to the collision and opined that the collision caused David's spinal stenosis to become symptomatic for the first time. David testified that the tingling was not painful and did not impede his activity in any way.

The tingling in David's feet, at any rate, was not a factor in his 7- to 7$^1$/$_2$-percent permanent impairment ratings. Nor, for that matter, did David's knee difficulties factor into his impairment ratings. Drs. Cotton, O'Neil, and Morrison agreed that the proper permanent impairment rating for David was between 7 and 7$^1$/$_2$ percent to the whole body as a result of David's preexisting and aggravated cervical spine symptoms. Accordingly, the only symptoms on which the experts disagreed as to causation were immaterial to the impairment rating by which David ultimately sought recovery.

At trial, DeLeon tendered proposed jury instruction No. 1 on damages, which represents only the first paragraph of NJI2d Civ. 4.09 and reads as follows:

There is evidence that the plaintiff had degenerative disc disease of the cervical spine (also called spondylosis), spinal stenosis of the lumbar spine, and degenerative arthritic changes in the knees prior to the date of the accident. The defendant is liable only for any damages that you find to be proximately caused by the accident.

The trial court rejected this instruction and gave instead David's proposed jury instruction No. 11, which represents both the first and second paragraphs of NJI2d Civ. 4.09:

There is evidence that the plaintiff had pre-existing back and joint conditions prior to the date of the accident. The defendant is liable only for any damages found to be proximately caused by the accident.

If you cannot separate damages caused by the pre-existing conditions from those caused by the accident, then the defendant is liable for all of those damages.

The trial court explained that its use of jury instruction No. 11 was supported by this court's decision in *McCall v. Weeks*, 183 Neb. 743, 164 N.W.2d 206 (1969), wherein this court held that the fact that a plaintiff suffered from a preexisting illness or injury prior to the tortious act cannot preclude recovery for those damages—including aggravation of the preexisting condition—that proximately resulted from the tortious act. DeLeon objected to and bases her appeal on this decision.

Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 530 N.W.2d 230 (1995). To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that the tendered instruction is the correct statement of law, that the tendered instruction is warranted by the evidence, and that the appellant was prejudiced by the court's refusal to give the tendered instruction. *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994). A jury instruction that misstates the burden of proof has a tendency to mislead the jury and is erroneous. *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995).

In *McCall v. Weeks, supra,* this court adopted the theory of the "eggshell-skull" plaintiff, whom the negligent defendant must take as he finds. The plaintiff's decedent in *McCall* suffered from emphysema at the time he was injured in a motor vehicle collision. The trial court had instructed the jury that the defendant must be liable for the entire amount of damages if the jury was unable to apportion the damages caused by the collision and the preexisting condition. This court affirmed the verdict for the plaintiff that resulted from that instruction, holding that

> [t]he proper rule is set out in 22 Am. Jur. 2d, Damages, § 122, p. 173: "In an action for damages for personal injuries caused by a wrongful act or omission, the injured person is entitled to recover full compensation for all damage proximately resulting from the defendant's act, even though his injuries may have been aggravated by reason of his pre-existing physical or mental condition, rendered more difficult to cure by reason of his state of health, or more serious, because of a latent disease, than they would have been had he been in robust health. The defendant cannot invoke the previous condition of the person injured for the purpose of escaping the consequences of his own negligence or reducing the damages for which he is liable. . . ."

*Id.* at 750, 164 N.W.2d at 210. The *McCall* court noted that the defendant in that case had failed to present evidence that established the extent of either the preexisting condition or the alleged aggravation of that condition.

Under *McCall,* the right of a person suffering from a disease, who is injured by reason of the negligence of another, to recover for all damages proximately resulting from the negligent act includes the right to recover for an aggravation of the preexisting disease. This holding served as authority in this case for the decision of the trial court to issue the entirety of NJI2d Civ. 4.09 as its instruction on damages. We find that this instruction was the correct statement of the law and that it did not misstate the burden of proof: the instruction does not permit a jury to assess damages in any amount unless the plaintiff first proves proximate cause. David adduced evidence

that the collision proximately caused an aggravation of his mild arthritic condition. Had the jury found that no part of his present condition was proximately caused by the collision, it could not have awarded David any damages.

The plaintiff has the burden of proving duty, breach, causation, and resultant harm to recover in a suit in negligence. The plaintiff is not, however, required to provide a precise line between the damages directly related to the accident and any preexisting physical or mental condition the defendant can exhume as a precondition for recovering any damages at all. Such a holding would fly in the face of the rule that "the wrong-doer is liable for all injuries resulting directly from the wrongful act, whether they could or could not have been foreseen by him." *Vosburg vs. Putney*, 80 Wis. 523, 530, 50 N.W. 403, 404 (1891). The trial court did not err by relying on *McCall v. Weeks*, 183 Neb. 743, 164 N.W.2d 206 (1969). Once the plaintiff presents evidence from which a jury reasonably can find that damages were proximately caused by the tortious act, the burden of apportioning damages resulting from the tort rests squarely on the defendant.

DeLeon failed to make that apportionment. Her experts agreed that the collision aggravated David's preexisting injuries. In addition, Dr. O'Neil, DeLeon's independent medical examiner, was unable to state with reasonable medical certainty what portion of David's difficulties was caused—or was not caused—by the collision, although he agreed that some part of David's injuries was indeed causally linked. Thus, DeLeon's reliance on *Macholan v. Wynegar*, 245 Neb. 374, 513 N.W.2d 309 (1994), as support for her tendered jury instruction is misplaced.

In *Macholan*, this court upheld a decision to reject an instruction that shifted the burden of apportioning damages for a case in which issues remained as to causation of the alleged injuries. The plaintiff in *Macholan* was not hurt badly enough in the collision to cause him any pain at that time, and no physician, including the plaintiff's own expert, could find any empirical evidence of injury to support the plaintiff's own complaints. The *Macholan* jury returned a verdict for the defendant.

In the instant case, without the admonition that the defendant is liable for all damages if the jury cannot apportion, the instruction would have failed to address the event in which a jury finds that damages were proximately caused by a collision, but is unable to determine precisely what quantum of those damages was not preexisting. This instruction prevents the result of a jury finding that damages were proximately caused by the tortious act, but failing to award damages because it cannot demarcate preexisting illnesses from new losses. David's jury was properly instructed as to the law on the apportionment of damages, and as such, we will not disturb its verdict.

AFFIRMED.

WRIGHT, J., not participating.