IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HERNANDEZ V. BARTHOLD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

FERNANDO HERNANDEZ, AN INDIVIDUAL, APPELLANT,

V.

CLAUDIA L. BARTHOLD, M.D., AN INDIVIDUAL, APPELLEE.

Filed February 6, 2018.    No. A-16-1089.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

Steven H. Howard, of Dowd, Howard & Corrigan, L.L.C., for appellant.

Joseph S. Daly and Mary M. Schott, of Sodoro, Daly, Shomaker & Selde, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and RIEDMANN, Judge, and INBODY, Judge, Retired.

MOORE, Chief Judge.

## I. INTRODUCTION

Fernando Hernandez appeals from a verdict entered in favor of Dr. Claudia L. Barthold following a jury trial in the district court for Douglas County. Hernandez sued Barthold, and other health care providers who were subsequently dismissed from the case, for negligent treatment of him for appendicitis. On appeal, Hernandez assigns error to certain jury instructions given by the district court and to the court's failure to allow certain cross-examination of Barthold. Finding no error, we affirm.

## II. BACKGROUND

On March 14, 2013, Hernandez filed a complaint in the district court against Barthold; Dr. Larry Lamberty; a nurse, Margaret M. Tharp; Dr. David Dean; and John Doe. Hernandez alleged

that he was a patient of these licensed health care providers, who on March 17, 2011, committed certain acts and omissions constituting medical negligence. Specifically, Hernandez alleged that the defendants failed to adequately assess him for appendicitis, hospitalize him or seek a surgical consultation prior to discharge, properly interpret the testing ordered by the previous emergency room physician, and give adequate discharge instructions. He also alleged that they misdiagnosed him, failed to warn him, and committed such other acts and omissions of emergency medical negligence as may be discovered in the prosecution of the action. Hernandez alleged that he suffered damages and would continue to suffer damages in the form of conscious physical pain and mental suffering, medical and hospital expenses then currently exceeding $100,000, lost income, scarring and disfigurement, loss of bodily function, and other damages. As noted above, the defendants other than Barthold were subsequently dismissed and the case proceeded to trial against only Barthold.

A jury trial was held March 24-28, 2016. In addition to testifying on his own behalf, Hernandez presented testimony from Dr. Brian R. Schurgin, Dr. Jennifer Oliveto, Dr. Chandra Kandh Are, and a nurse practitioner. He also presented portions of the videotaped depositions of Barthold and Dr. David C. Dreyfuss. Barthold testified on her own behalf and presented testimony from Lamberty and Dr. Brian Cunningham, as well as the videotaped deposition of Dean. The court received various documentary exhibits into evidence, including medical records from Hernandez' visit to the emergency room on March 17, 2011, and his subsequent visit to the emergency room, surgery, and hospitalization from March 19 to 27. We have briefly summarized the evidence below.

On March 17, 2011, Hernandez presented to the emergency room with complaints of abdominal pain that began three weeks prior as sharp pain located "in the left upper quadrant." He reported having nausea and vomiting at that time that began after eating tacos at a restaurant. Hernandez testified at trial that the "problem from the tacos" had resolved by March 17, when he began to feel new pain on the right side of his body "near the area of [his] belt." The pain was worse on March 17 and described in the medical record as "diffuse middle abd[omen]." According to Hernandez, his symptoms on March 17 were so severe he was unable to lie down.

Hernandez was originally seen by staff physician Lamberty and the resident working with him, Dr. Bhargava Mullapudi. Lamberty was present with Mullapudi for a physical examination of Hernandez. An abdominal CT scan was ordered, which was initially read by resident radiologist Dr. Joel Brink. Brink's radiology report of March 17 states that Hernandez' appendix "is slightly larger than typical measuring 1.1 cm" but "[m]ay be normal variant." According to Brink's report, the CT scan showed "no appendiceal wall thickening or stranding inflammatory changes." An x ray and blood work were also ordered. Hernandez' white blood cell count was 13,700; the medical record shows that the normal range is 4,000 to 11,000. Appendicitis was "on [Lamberty's] differential diagnosis" as the cause of Hernandez' pain. Lamberty had not reached a diagnosis by the time his shift ended but was "thinking we would have an appendicitis." He had not arranged for a surgical consult because as he read the CT scan report, it did not show appendicitis and surgeons "don't come down unless you've got a CAT scan . . . to verify that they've got something to do surgery on."

When Lamberty's shift ended, Barthold took over as Hernandez's attending physician. Lamberty told Barthold he was "suspicious of appendicitis." At trial, Barthold did not recall whether she actually saw and physically evaluated Hernandez on March 17, 2011. Barthold was working with a different resident, Dean, who replaced Mullapudi when the shift changed. According to his deposition testimony, Dean saw and physically examined Hernandez, but Dean did not note an exam in the medical record. Barthold diagnosed Hernandez with epigastric pain, dyspepsia and abdominal pain. Hernandez reported to Dean that his pain was much better and still located in his epigastric area. Dean's note in the medical record indicates that Hernandez was "comfortable with discharge and will return with problems." Accordingly, Hernandez was discharged by Barthold "to home."

Barthold relied on Brink's radiology report to determine whether the CT scan taken on March 17, 2011, showed a normal appendix. Staff radiologist Oliveto interpreted the CT scan the following morning, after Hernandez had been discharged. Oliveto thought Hernandez' "[e]nlarged appendix" may be "normal," but "in a patient with abdominal pain" she recommended "close follow-up to exclude early appendicitis." She called her findings down to another emergency room physician who was on duty then, and she did not know what, if anything, that doctor did with the information.

Hernandez returned to the emergency room on March 19, 2011, with a ruptured appendix. According to Hernandez, he spent the time between emergency room visits experiencing "unbearable" pain, despite taking medication he had been given at the pharmacy upon his discharge on March 17. Hernandez was hospitalized on March 19, and Are performed emergency surgery. Because Hernandez' appendix had ruptured, Are was unable to perform the surgery laparoscopically, and he had to perform a more invasive open surgery. Are testified that Hernandez' appendix was perforated or ruptured, was infected, and "looked gangrenous." Hernandez was discharged from the hospital on March 27.

At trial, Hernandez's expert, Schurgin, opined that Barthold violated the standard of care, and we discuss his opinions about those violations in the analysis section below. Schurgin also opined that if the standard of care had been met, Hernandez would have most likely undergone a laparoscopic appendectomy, "a much smaller procedure, easily tolerated," would have gone home the next day, and would have had less scarring than that resulting from "a large abdominal incision, or more importantly, from a ruptured appendix." In contrast, Barthold's expert, Cunningham, opined that Barthold met the standard of care.

The jury returned a general verdict in favor of Barthold. The district court accepted the verdict and entered judgment accordingly. The court subsequently denied Hernandez' motion for new trial, and Hernandez perfected his appeal to this court.

## III. ASSIGNMENTS OF ERROR

Hernandez asserts, consolidated and restated, that the district court erred in (1) failing to give his requested instructions on statement of the case, apportionment of damages due to preexisting conditions, and concurrent causes and (2) not allowing Hernandez to question Barthold about what care she would have provided had she timely received Oliveto's interpretation of Hernandez' CT scan.

## IV. STANDARD OF REVIEW

Whether the jury instructions given by a trial court are correct is a question of law. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017). When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Armstrong v. Clarkson College, supra.* In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id.* An abuse of discretion, warranting reversal of a trial court's evidentiary decision on appeal, occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *O'Brien v. Cessna Aircraft Co., supra.*

## V. ANALYSIS

### 1. JURY INSTRUCTIONS

To establish reversible error from a court's failure to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *O'Brien v. Cessna Aircraft Co., supra.* Jury instructions do not constitute prejudicial error if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence. *Id.*

Hernandez asserts that the district court erred in failing to give the requested instructions on statement of the case, apportionment of damages due to preexisting conditions, and concurrent causes. We address his arguments with respect to each of these jury instructions in turn.

### (a) Statement of Case

Hernandez argues that instruction No. 4, the statement of the case instruction given by the district court, oversimplified his allegations of negligence and should have included each of the breaches of the standard of care set forth in Hernandez' proposed instruction. Barthold argues that the instruction given by the court fairly presented Hernandez' claims of negligence and accurately reflected the evidence at trial. Barthold also argues that that Hernandez' requested statement of the case instruction was repetitious and unduly complex. A litigant is entitled to have the jury instructed upon only those theories of the case which are presented by the pleadings and which are supported by competent evidence. *Armstrong v. Clarkson College, supra.*

The statement of the case instruction given by the district court set forth Hernandez' claims that Barthold was negligent in:

1. Failing to personally see and examine [Hernandez] in the Emergency Room on March 17, 2011;

2. Failing to obtain a surgical consult for [Hernandez] on March 17, 2011 prior to discharging him.

Elsewhere in instruction No. 4, the court instructed the jury that before Hernandez could recover, he had to prove by the greater weight of the evidence that Barthold was negligent in one or more of the ways claimed, that this negligence was a proximate cause of some damage to Hernandez, and the nature and extent of that damage.

Hernandez' proposed statement of the case instruction set forth his claims that Barthold was negligent in:

1. Failing to adequately assess for appendicitis;

2. Failing to examine the patient prior to discharge;

3. Failing to hospitalize the patient or seek a surgical consultation prior to discharge;

4. Failing to properly interpret the testing ordered by the previous emergency room physician;

5. Failing to give adequate discharge instructions;

6. Misdiagnosing the patient;

7. Failing to warn the patient;

8. Failing to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of [Barthold's] profession engaged in a similar practice in Omaha, Douglas County, Nebraska or in similar localities.

In his brief on appeal, Hernandez also references a ninth allegation of negligence, which was not included in his proposed jury instruction but was reflected in his complaint.

The substance of paragraph 8 of Hernandez' proposed statement of the case instruction was included in instruction No. 5 given by the district court, which defined "professional negligence" and "standard of care." Accordingly, the district court did not err in failing to include that paragraph in instruction No. 4. It is not error for a trial court to refuse a requested instruction if the substance of the proposed instruction is contained in those instructions actually given. *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017).

As to the other paragraphs of Hernandez' proposed statement of the case instruction which were not included in instruction No. 4, we find no error in the district court's failure to include them in the instruction in light of the evidence presented at trial. Hernandez' expert, Schurgin, testified that there were "a couple" of standard of care violations by Barthold. First, he testified that when Hernandez' care was transferred from Lamberty to Barthold, she should have corroborated Hernandez' history and performed her own independent physical assessment of his condition. Schurgin repeatedly stressed throughout his testimony that Barthold's failure to establish a direct patient-physician relationship and conduct her own independent history and physical examination of Hernandez violated the standard of care.

- 5 -

When asked if he had testified to all of his standard of care opinions, Schurgin stated:

> Well . . . we talked about the transfer of care. We talked about taking a history and physical exam. We talked about understanding the significance of the white blood cell count, and the CT scan [reflecting an enlarged appendix]. I think those are all . . . very, very important.
>
> [T]he standard of care requires . . . all of those things. . . .
>
> So . . . failing to take all of that into consideration in coming up with a differential diagnosis of appendicitis and consulting a surgeon is the final deviation of the standard of care.

This case is similar to *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). In that case, the appellant claimed the trial court's burden-of-proof jury instructions were incomplete because they did not include each specific act of negligence or design defect reflected in his pleadings and proffered jury instructions. The proposed instructions were lengthy and complex, and the trial court, instead, drafted its own instruction to eliminate redundancy and simplify the issues, while still allowing the parties to argue all claims and defenses supported by the pleadings and evidence. In affirming the trial court's refusal to give the appellant's proposed instruction, the Nebraska Supreme Court observed that a trial court is not required to submit repetitious allegations of the same act of negligence. *Id.* The Nebraska Supreme Court has consistently condemned the practice of instructing the jury verbatim and, instead, has placed the duty squarely upon the trial court to properly analyze, summarize, and submit the substance of the numerous allegations of negligence in tort petitions. See *id.* In *O'Brien*, the Supreme Court concluded that the trial court had properly analyzed and fairly summarized the appellant's theories and found no error in the failure to give the appellant's requested instruction.

Similarly, we have reviewed the entire record in this case, including the testimony specifically cited by Hernandez in his brief, and we find that the instructions given in this case fairly summarized Hernandez' theories, were supported by the evidence, and minimized redundancy. Many of the assertions in Hernandez' proposed statement of the case instruction were repetitious, while other allegations were not reflected by the evidence. For example, Schurgin did not criticize Barthold for failing to hospitalize Hernandez. Nor did Schurgin criticize the discharge instructions or address any failure to warn in his testimony. The instructions given by the court correctly stated the law, were not misleading, and adequately covered the issues to be submitted to the jury. Hernandez' argument that the court should have given his proposed statement of the case instruction is without merit.

(b) Preexisting Condition/Apportionment of Damages

Hernandez' next assignment of error addresses instruction No. 14 given by the district court. Hernandez argues that instead of the instruction actually given, the court should have given the jury the following proposed instruction:

> There is evidence that on March 17, 2011, [Hernandez] had appendicitis, which condition continued after [Barthold] discharged him. [Hernandez] claims it was not timely treated and [Barthold] is only liable for any damages that you find to be proximately caused by the

delay. If you cannot separate damages caused by the pre-existing appendicitis from those caused by the delay, then [Barthold] is liable for all of those damages.

The court rejected Hernandez' proposed instruction and gave instruction No. 14, which provided, "There is evidence that [Hernandez] may have had a condition prior to his presenting to the emergency room . . . on March 17, 2011. [Barthold] is liable only for any damages that you find to be proximately caused by her negligence and not the condition itself." Hernandez' complaints about instruction No. 14 are two-fold. First, he argues that the court erred by instructing the jury that he "may have had" a condition when he first presented to the emergency room, instead of instructing the jury that he "had" a condition at that time. Second, he argues that the instruction should have included a sentence addressing apportionment of damages like the final sentence in his proposed instruction.

We conclude that Hernandez was not prejudiced by the failure to give his requested jury instruction regarding the alleged preexisting condition and apportionment of damages. The Nebraska Supreme Court recently addressed a similar argument in *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, ___ N.W.2d ___ (2018), which was also a medical negligence case. The Supreme Court found no error in the trial court's refusal to give the plaintiff's requested jury instruction regarding her alleged preexisting condition and apportionment of damages. The Supreme Court first noted the case of *David v. DeLeon*, 250 Neb. 109, 547 N.W.2d 726 (1996), wherein it held that a preexisting condition jury instruction did not permit a jury to assess damages in any amount unless the plaintiff first proved proximate case (noting that plaintiff has burden of proving duty, breach, causation, and resultant harm to recover in negligence action). See, also, *Higginbotham v. Sukup,* 15 Neb. App. 821, 737 N.W.2d 910 (2007) (instruction dealing with apportionment of damages appropriate only where plaintiff has established injury and causation and there remains only question of apportioning damages between preexisting injury and defendant's negligence).

In *Rodriguez*, the Supreme Court then noted the case of *Golnick v. Callender,* 290 Neb. 395, 860 N.W.2d 180 (2015), where it considered the omission of the apportionment of damages portion of the preexisting condition jury instruction. In *Golnick*, the Supreme Court held that the plaintiff was not prejudiced because the jury had returned a general verdict. The court further stated that when the jury returns a general verdict for one party, an appellate court presumes that the jury found for the successful party on all issues raised by that party and presented to the jur*y. Id.* Accordingly, the court in *Golnick* interpreted the verdict as finding that the plaintiff failed to prove that the defendant was the proximate cause of the plaintiff's injuries.

In *Rodriguez*, the Supreme Court similarly presumed that the jury found for the defendants on all issues presented to it when it returned a general verdict in their favor. The court held that because the jury presumably decided that the doctor was not negligent or the proximate cause of Rodriguez' injuries, the jury never reached the issues of preexisting conditions or damages.

Here, given the general verdict entered in favor of Barthold, we can presume that the jury found Hernandez failed to establish that Barthold was negligent in any way that proximately caused damage to Hernandez.

We conclude that the district court did not err in failing to give the preexisting condition and apportionment of damages instruction as requested by Hernandez.

(c) Concurrent Causes

Hernandez asserts that the district court erred in failing to give his requested instruction on concurrent causes. He argues that there was evidence of negligence by some of his other treating doctors which combined with Barthold's, and that the jury should have been instructed accordingly. Contrary to Hernandez' assertions, the evidence in this case did not warrant giving a concurrent causes instruction, and the district court did not err in failing to give his requested instruction on this issue.

Irrespective of the pleadings, if the evidence is such that a jury could find that the separate independent negligent acts of more than one person combined to proximately cause the same injury or damages, the jury is to be instructed that each such act or omission is a proximate cause and that each such person may be held responsible for the entire injury or omission, even though some may have been more negligent than others. *McLaughlin v. Hellbusch*, 251 Neb. 389, 557 N.W.2d 657 (1997).

Hernandez argues that the district court should have given his proposed concurrent causes instruction, modeled on NJI2d Civ. 3.42, because "the evidence showed that a number of health care providers other than [Barthold] may have also committed negligent acts which, when combined with [Barthold's] negligence, proximately caused [Hernandez'] injuries." Brief for appellant at 35. Hernandez argues that his requested instruction was warranted due to the following negligent acts by other health care providers: misinterpretations of the CT scan by Brink and Lamberty; the transfer of his care from Lamberty to Barthold; Dean's failure to examine and his decision to discharge Hernandez; the failure of the emergency room to contact Hernandez after Oliveto called with her interpretation of the CT scan; and the lack of hospital rules requiring staff physicians to properly supervise their residents and actually see the patients being discharged.

Brink, the resident radiologist who read Hernandez's CT scan on March 17, 2011, reported, "Appendix is slightly larger than typical measuring 1.1 cm. there is no appendiceal wall thickening or stranding inflammatory changes. May be normal variant." Oliveto, the staff radiologist interpreted the scan the following day, stating, "Enlarged appendix without wall thickening or adjacent inflammatory change. This may be normal, however in a patient with abdominal pain, would recommend close follow-up to exclude early appendicitis." Oliveto did not disagree with Brink's report or interpretation of the CT scan. At trial, Oliveto testified that she "gave a differential," while Brink "gave one option," but she testified that she otherwise had no disagreement with anything in Brink's report. After interpreting the CT scan on March 18, Oliveto "called down [her] findings" to the emergency room doctor on duty, but she did not know what if anything that doctor did with the information. There was no testimony that either Brink or Oliveto breached the standard of care.

Lamberty was the staff physician on duty prior to Barthold on March 17, 2011. He was working with a resident, Mullapudi. Appendicitis was one of the things Lamberty was considering in his differential diagnosis as a cause of Hernandez' intraabdominal pain. He ordered the CT scan for Hernandez, but at that point, he did not have a diagnosis for Hernandez' pain. The medical record reflects that Hernandez' pain lessened during the time he was in the emergency room on March 17. At trial, Lamberty was asked whether he ever wrote in the record that he thought

appendicitis had been ruled out. He replied, "I believe I told [Barthold] that I wasn't real concerned about the appendicitis anymore at that point in time [when Hernandez' care was transferred to Barthold]." He testified further, "I don't believe that I told her that I knew what was causing the pain, or what I even thought. It looked more like a continuation [of Hernandez' earlier illness from eating tacos]." Lamberty testified that his thought at the time was that Hernandez had gotten sick from the tacos and "ended up continuing to have illness because of probably dehydration . . . with what he had said about the vomiting . . . and that he was not catching up very well."

There was no testimony that Lamberty or Mullapudi breached the standard of care. Barthold's expert Schurgin was asked if he had an opinion as to whether Lamberty was negligent. Schurgin testified he was never asked to review Lamberty's work, but he went on to testify that based on what was charted, Lamberty "was clearly doing care that met the standard of care." Schurgin elaborated, "[Lamberty] was pointing to appendicitis as the probable cause here and went and got the CT scan and then passed that case and care on to [Barthold]. But all I have is that one or two notes. So based on that, I'm not critical of his care." Elsewhere in his testimony, Schurgin commented that notations in the medical record regarding Lamberty's interactions with and evaluation of Hernandez showed that he was in compliance with the standard of care and reflected "excellent care and attention to the patient." Finally, in discussing the transfer of care from Lamberty to Barthold, Schurgin testified that the transfer of care is "very, very important," but in discussing this issue, he was not critical of Lamberty, but again focused on the importance of the accepting physician performing an independent evaluation of the patient, which was not done in this case.

Barthold, who did not examine Hernandez, was also working with Dean, the resident who examined Hernandez and discharged him. Schurgin was critical of Dean's evaluation of Hernandez and his record-keeping, but he stated that his opinions were based on the care rendered by Barthold, who was required by the standard of care to "do her own independent history and physical exam" regardless of any examination of Hernandez by Dean. On cross-examination, Barthold's attorney asked Schurgin if he had an opinion as to whether Dean met the standard of care, but the district court sustained Hernandez' objection on "relevance" and "403." Schurgin testified that Dean's status as a resident did not change "the responsibility for [Barthold]" or "the breaches in the standard of care," which required Barthold as the attending physician to establish a patient-physician relationship with Hernandez. In her trial testimony, Barthold stated that Dean did not make any medical decisions without her knowledge and that she approved all decisions he did make.

In sum, the evidence did not support a finding that any other health care providers were negligent. Because the evidence was not such that a jury could find that the separate independent negligent acts of anyone else combined with Barthold's to proximately cause Hernandez' injuries, the district court did not err in failing to give the requested concurrent cause instruction. See *McLaughlin v. Hellbusch*, 251 Neb. 389, 557 N.W.2d 657 (1997).

## 2. CROSS-EXAMINATION OF BARTHOLD

Hernandez asserts that the district court erred in not allowing him to question Barthold about what care she would have provided had she timely received Oliveto's interpretation of his CT scan.

In her deposition, Barthold testified upon direct examination by Hernandez' attorney as follows:

> Q. What would you have done differently, if anything, had you had [Oliveto's] interpretation of the CT scan available prior to discharge on the 17th?
>
> [Barthold's attorney]: I'm going to object to the form of the question. It calls for speculation, but go ahead and answer if you can.
>
> A. Sure, I think there's a tremendous amount of "it depends" based on that. If I had [Oliveto's] CT scan [report], we would have performed a repeat abdominal exam on [Hernandez] and then, potentially, had a discussion with him about going home versus being observed in the hospital, but then looking at [Dean's] note, it appears he had that conversation with [Hernandez] already, stating that his pain is much better, still located in the epigastric area, is comfortable with discharge, and will return with problems.

Prior to trial, the district court granted Hernandez' motion to publish to the jury selected portions of Barthold's deposition during his case-in-chief. The court's order included the portion of Hernandez' deposition noted above. At the start of trial, Hernandez published exhibit 16 to the jury. Exhibit 16, an edited DVD containing selected portions of Barthold's video deposition, included the above-quoted sequence (minus the objection from Barthold's attorney).

Barthold also testified in-person at trial. During cross-examination, Hernandez' attorney asked Barthold questions regarding whether her care and treatment of Hernandez would have been different if she had had Oliveto's report of the CT scan. Barthold's attorney objected to the questions as assuming facts not in evidence, and the district court sustained the objections. Hernandez thereafter made an offer of proof "to answer the question, what would [Barthold] have done differently, if anything, had [she] had [Oliveto's] interpretation of the CT scan available prior to discharge on the 17th," by referencing the relevant page and line numbers from the transcription of Barthold's deposition (i.e., the page and line numbers corresponding to the answer quoted above).

In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017). The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). Where evidence is cumulative to other evidence received by the court, its exclusion will not be considered prejudicial error. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016).

Even though Hernandez was not allowed to cross-examine Barthold at trial about the response she gave in her deposition, that deposition testimony was not excluded from evidence and was before the jury for its consideration. Barthold's statement about what she would have

done if she had had Oliveto's report sooner was presented to the jury. Additional statements to that effect on cross-examination would have been cumulative to the evidence already admitted. Hernandez was not prejudiced by the district court's denial of cross-examination on this issue. We also note that, although the district court granted a motion by Hernandez at trial to allow him to cross-examine one of Barthold's experts "regarding what [Barthold] testified to in her deposition as to what she would have done or not done is she would have had [Oliveto's] CT report," he "chose not to ask those [questions]." Hernandez has not shown prejudicial error. His assignment of error is without merit.

## VI. CONCLUSION

We conclude that the district court did not err with regard to the instructions given to the jury or in its evidentiary ruling during cross-examination of Barthold. We affirm the judgment.

AFFIRMED.