Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/31/2019 09:05 AM CST

Dock Kelly III, appellant, v. Cutch, Inc.,
a Nebraska corporation, doing business as
Burger Star Restaurant, and Cutchall
Management Company, Inc., appellees.

___ N.W.2d ___

Filed December 31, 2019.    No. A-18-761.

1. **Jury Instructions: Appeal and Error.** Whether a jury instruction is correct is a question of law, which an appellate court independently decides.

2. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the failure to give the requested instruction.

3. **Negligence: Jury Instructions: Damages.** A court is required to instruct a jury on damages for the aggravation of a preexisting condition where there is evidence to support a finding that the defendant's negligence had aggravated a preexisting condition.

4. **Damages: Liability.** A defendant, under Nebraska law, can be liable for the total harm to a plaintiff from an accident even though the injury was greater because of the plaintiff's preexisting physical condition than would usually be caused by such an accident.

5. **Expert Witnesses.** Where injuries are objective, expert testimony is not required.

6. **Actions: Negligence: Damages: Proof.** The plaintiff has the burden of proving duty, breach, causation, and resultant harm to recover in a suit in negligence.

7. **Negligence: Damages: Proximate Cause: Proof.** Once the plaintiff presents evidence from which a jury reasonably can find that damages were proximately caused by the tortious act, the burden of apportioning damages resulting from the tort rests squarely on the defendant.

8. **Jury Instructions: Damages.** The apportionment instruction is appropriate where there is evidence of a preexisting condition but the degree to which that condition may have been aggravated could not be determined.

9. \_\_\_\_: \_\_\_\_. In the absence of proof of aggravation, an instruction on apportionment of damages would be inappropriate.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Affirmed.

James E. Harris and Britany S. Shotkoski, of Harris & Associates, P.C., L.L.O., and Daniel L. Draisen, of Krause, Moorhead & Draisen, P.A., for appellant.

David D. Ernst and Jeffrey A. Nix, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellees.

Riedmann, Arterburn, and Welch, Judges.

Riedmann, Judge.

INTRODUCTION

Dock Kelly III appeals a jury verdict in his favor awarding him damages for injuries he sustained in a slip-and-fall accident. On appeal, he alleges that the district court for Douglas County erred in refusing to give his proposed jury instruction on the aggravation of a preexisting condition and failed to properly instruct the jury on the burden of proof on damages. We conclude that Kelly's proposed jury instruction was not warranted by the evidence and that the jury was properly instructed on damages. Therefore, the district court did not err in refusing to give the proposed instruction, and we affirm.

BACKGROUND

At the time of the slip-and-fall accident, Kelly was a resident of South Carolina and the head wrestling coach at a university located there. On March 10, 2010, Kelly was in Omaha, Nebraska, for a wrestling tournament and went to eat dinner at Burger Star Restaurant, which was owned and

operated by Cutch, Inc., and Cutchall Management Company, Inc. (collectively the appellees). Kelly slipped on a wet floor at the restaurant and fell, sustaining injuries to his left knee and back.

Kelly has a congenital deformity of his right arm, and his right leg was amputated below the knee when he was a child. He was wearing a prosthetic leg at the time of the fall. Despite this, the record indicates that Kelly had no significant health problems prior to his fall, including no history of pain, injury, or limitation with his left knee or back. To the contrary, Kelly was a "NCAA Division I" wrestler and was inducted into the National Wrestling Hall of Fame in 1997. He testified that he never had any problems due to having only one leg.

After falling at the restaurant, Kelly experienced sharp, shooting pain in his lower back as well as pain, weakness, and instability in his left knee. In September 2010, Kelly fell in the shower, resulting in additional injuries to his left knee, including a torn anterior cruciate ligament, torn lateral collateral ligament, frayed and/or torn lateral meniscus, and avulsed lateral hamstring tendon. He had surgery on his left knee in March 2015.

Kelly filed a negligence action against the appellees in 2012, asserting that the appellees created a dangerous condition at the restaurant by mopping the floor and failing to warn its customers of the condition. He filed an amended complaint in 2013.

A jury trial was held in this matter in July 2018. During trial, Kelly proposed a jury instruction on the aggravation of a preexisting condition based on a standard jury instruction. See NJI2d Civ. 4.09. The district court refused to give the instruction. The jury ultimately found in favor of Kelly and awarded him $95,000 in damages. Kelly timely appeals.

## ASSIGNMENTS OF ERROR

Kelly assigns that the district court erred in failing to give his proposed jury instruction on the aggravation of a preexisting condition and in failing to properly instruct the jury regarding the burden of proof on damages.

## STANDARD OF REVIEW

[1] Whether a jury instruction is correct is a question of law, which an appellate court independently decides. *Bank v. Mickels*, 302 Neb. 1009, 926 N.W.2d 97 (2019).

[2] To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the failure to give the requested instruction. *Id*.

## ANALYSIS

*Jury Instruction on Aggravation
of Preexisting Condition.*

Kelly argues that the district court erred in refusing to give his proposed jury instruction on the aggravation of a preexisting condition. The jury instruction that Kelly requested stated:

> There is evidence that [Kelly] had a prosthetic right leg prior to the slip and fall of March 10, 2010. [The appellees] are liable only for any damages that you find to be caused by the [appellees'] negligence.
>
> If you cannot separate damages caused by the preexisting condition from those caused by the slip and fall, then the [appellees] are liable for all of those damages.
>
> This is true even if [Kelly's] preexisting condition made him more susceptible to the possibility of ill effects than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury.

The first paragraph of the proposed instruction is the standard jury instruction, NJI2d Civ. 4.09, for determining damages when the plaintiff has a preexisting condition. See *Golnick v. Callender*, 290 Neb. 395, 860 N.W.2d 180 (2015). The second paragraph is frequently called the apportionment instruction. *Id*. It is appropriately used when the jury may be unable to precisely determine which of the plaintiff's damages were not preexisting. *Id*.

[3] The first two paragraphs of Kelly's proposed instruc-tion are a correct statement of the law. See *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996). A court is required to instruct a jury on damages for the aggravation of a preexisting condition where there is evidence to support a finding that the defendant's negligence had aggravated a preexisting condition. See, *Golnick v. Callender, supra*; *Castillo v. Young*, 272 Neb. 240, 720 N.W.2d 40 (2006).

We conclude that the evidence did not warrant instructing the jury on the aggravation of a preexisting condition, because Kelly had no preexisting condition that was aggravated by the March 2010 fall. As a result of the slip-and-fall accident, Kelly sustained injuries to his left knee and back. Although there are references in the record to a history of osteoarthritis in the left knee and scoliosis of the spine, neither condition ever caused Kelly any pain or limitation. Kelly appeared unaware that he had scoliosis and testified that if he did, it never stopped him from doing anything he wanted to do.

In general, Kelly said that he had no history of problems with his knee or back that interfered with his life. And his med-ical records establish that he had no back or leg pain prior to the March 2010 fall, that his left knee was "highly functional" before the fall, and that he was able to do everything without any disability or limitation. Therefore, because the record lacks evidence of a preexisting condition in Kelly's left knee or back, the first two paragraphs of Kelly's proposed instruction were not warranted by the evidence, and the district court properly refused to so instruct the jury.

[4] The notion embodied by the third paragraph of Kelly's proposed instruction must be given when the plaintiff produces evidence to support the "eggshell-skull" theory, which gener-ally includes evidence of a preexisting condition which predis-poses the plaintiff to injury or greater injury than would occur without the preexisting condition. See, *Ketteler v. Daniel, supra*; *Aflague v. Luger*, 8 Neb. App. 150, 589 N.W.2d 177 (1999). While the first two paragraphs of Kelly's proposed

instruction address the question of apportionment of damages, the third paragraph addresses a different matter—"a subtle facet of causation." See *Aflague v. Luger*, 8 Neb. App. at 159, 589 N.W.2d at 183. This paragraph enables a jury to understand that a defendant, under Nebraska law, can be liable for the total harm to a plaintiff from an accident even though the injury was greater because of the plaintiff's preexisting physical condition than would usually be caused by such an accident. *Aflague v. Luger, supra*.

In *Castillo v. Young, supra*, the trial court gave the jury instructions similar to the first two paragraphs of Kelly's proposed instruction, but refused to give the third paragraph on the eggshell-skull theory. The evidence indicated that the plaintiff had broken her jaw several years before she was injured in the operative car accident, but her jaw completely recovered and she had had no symptoms for a number of years prior to the accident. At trial, there was testimony from the plaintiff's treating physician that the accident aggravated a preexisting condition and that the plaintiff was fragile due to her prior injury. Therefore, the Nebraska Supreme Court concluded that the proffered instruction correctly stated the law and was warranted by the evidence offered by the expert witness and that the failure to give the instruction was prejudicial to the plaintiff. It iterated that if a plaintiff has a preexisting condition and the defendant's conduct resulted in greater damages because of that preexisting condition, the defendant is nonetheless liable for all damages proximately caused by the defendant's conduct.

In reaching its decision in *Castillo v. Young, supra*, the Supreme Court relied upon *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996). There, the plaintiff proposed the three-paragraph instruction proffered by Kelly in the instant case, but the trial court declined to give the second and third paragraphs. In reversing that decision, the Supreme Court found that the instruction was warranted by evidence offered by two separate physicians who testified that the plaintiff

suffered from a preexisting condition, fibromyalgia, and that she suffered from back and neck conditions prior to the car accident which were aggravated by the accident.

Subsequently, in *Aflague v. Luger, supra*, this court found that an eggshell-skull instruction was warranted where there was expert testimony that because the plaintiff had suffered a severe head injury in the past, she was more vulnerable to side effects even after relatively minor trauma that might do very little in a person who has never had an injury.

It is clear that under the eggshell-skull theory, a defendant is liable for all damages proximately caused by its conduct even when a plaintiff has a preexisting condition and the defendant's conduct resulted in greater damages because of that preexisting condition. See, *Castillo v. Young*, 272 Neb. 240, 720 N.W.2d 40 (2006); *Aflague v. Luger*, 8 Neb. App. 150, 589 N.W.2d 177 (1999). In other words, the defendant takes the plaintiff as the defendant finds him or her. See *Aflague v. Luger, supra*. The commonality among the aforementioned cases is that the instruction was found to be warranted by the evidence because there was expert testimony that the accident aggravated a preexisting condition, the plaintiff was more susceptible to injury due to a preexisting condition, or the plaintiff was injured more severely than would be expected because of a preexisting condition. This expert testimony was lacking in the instant case.

Despite testimony from Kelly's treating physician and surgeon regarding the injuries he sustained to his left knee, neither testified as to what effect, if any, having a below-the-knee prosthetic on his right side had on his ability to ambulate or function postinjury. His primary care physician testified that a consulting physician, who in December 2010 recommended surgery, reported that Kelly "'walks fine with a prosthesis and gets around well except for the problems he is having with his left leg.'" Kelly identified a problem walking on uneven ground, but that was limited to "instability, a feeling his knee is going to give way and buckle on him and

then it actually does start to give way, buckle and also causes him pain."

After Kelly's surgery in March 2015, his surgeon recommended closely supervised rehabilitation for a couple of weeks due to his other impairments, but as with other patients, his rehabilitation began the day after surgery. His surgeon narrated a videotaped rehabilitation session in which he described Kelly as "non-weightbearing on his left leg[,] which is the leg that we surgically repaired and he's bearing weight on his prosthetic leg on the right side." He explained rehabilitation was "somewhat more difficult than normal" due to Kelly's other issues. Nonetheless, the surgeon expected that Kelly would be able to get down on the ground and demonstrate wrestling moves to college athletes within a year of surgery. Kelly's physical therapy discharge notes reveal that at the time of discharge, he was ambulating with his normal gait, meaning that his ability to walk had returned to the point that it was prior to his fall. He also demonstrated the ability to "transfer back and forth from right to left [without] discrepancy in terms of the use of his legs." Importantly, he was able to "get up off the floor to a standing position without help or difficulty." By November 2015, Kelly was able to go up and down stairs without the use of a handrail. Other than his other abnormalities resulting in a "somewhat more difficult" rehabilitation process, the expert testimony did not suggest that they caused Kelly to suffer any ill effects greater than he would have suffered without a prosthetic leg.

[5] We recognize that where injuries are objective, expert testimony is not required. See, *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994); *Hamer v. Henry*, 215 Neb. 805, 341 N.W.2d 322 (1983). Kelly had a below-the-knee amputation of his right leg and a deformity of his right arm which are objective and need no expert testimony to explain their existence. The undisputed evidence, however, established that despite these conditions, Kelly had no pain or limitation and was able

to function properly—if not at an above-average level—considering his athletic accomplishments. Thus, in order to support the necessity of an eggshell-skull jury instruction, evidence was necessary to suggest that due to his conditions, Kelly was more susceptible to injury or was injured worse than someone without his conditions would have been. No such evidence was presented in this case.

Kelly and his lay witnesses testified that following the injury, he was slower, less confident, and had the sensation that his left knee was going to give out. They testified that he was no longer able to get down on the mat and demonstrate moves to his wrestlers. However, there was no testimony that these resultant effects were any different, more severe, or more pronounced than if Kelly did not have a prosthetic leg. In other words, the evidence did not support a conclusion that the left knee injury was not the sole cause of these limitations or that Kelly's right leg amputation contributed or magnified the ill effects of his left knee injury. Although there was testimony that Kelly had difficulty maneuvering stairs, the testimony did not explain whether that was because of his left knee instability or because he does not or cannot bear weight on his prosthetic leg. Given the expert testimony that Kelly was able to shift his weight from leg to leg at the time he was discharged from physical therapy, his insecurity on stairs seems to be a product of his left knee injury, without exacerbation due to his prosthesis. Because there was no testimony describing how his right leg abnormality made his condition worse, it was proper for the district court to refuse Kelly's proposed eggshell-skull jury instruction.

In addition, as discussed above, there are indications in the record that Kelly had osteoarthritis in his left knee and scoliosis of the spine, but the evidence establishes that neither condition caused him any pain or limitation prior to his fall. Kelly's treating physician and his surgeon were each asked whether the underlying osteoarthritis was contributing to Kelly's knee pain after the fall, and they both said it "could" be. However, expert

medical testimony based on "'could'" lacks the definiteness required to prove causation. See *Paulsen v. State*, 249 Neb. 112, 121, 541 N.W.2d 636, 643 (1996). Therefore, we conclude that the evidence did not warrant instructing the jury on the eggshell-skull theory and that the district court did not err in refusing to do so.

*Apportioning Damages.*

In his second assigned error, Kelly argues that by refusing to give his proposed jury instruction, the district court failed to properly instruct the jury on the burden of proof regarding damages. We disagree.

[6,7] The plaintiff has the burden of proving duty, breach, causation, and resultant harm to recover in a suit in negligence. *David v. DeLeon*, 250 Neb. 109, 547 N.W.2d 726 (1996). Once the plaintiff presents evidence from which a jury reasonably can find that damages were proximately caused by the tortious act, the burden of apportioning damages resulting from the tort rests squarely on the defendant. *Id*.

[8,9] The portion of the proposed instruction at issue in this argument would have informed the jury that if it could not separate damages caused by the preexisting condition from those caused by the slip and fall, then the appellees were liable for all of those damages. As explained above, this paragraph is frequently called the apportionment instruction. See *Golnick v. Callender*, 290 Neb. 395, 860 N.W.2d 180 (2015). The apportionment instruction is appropriate where there is evidence of a preexisting condition but the degree to which that condition may have been aggravated could not be determined. *Gustafson v. Burlington Northern RR. Co.*, 252 Neb. 226, 561 N.W.2d 212 (1997). In the absence of proof of aggravation, an instruction on apportionment of damages would be inappropriate. *Id*.

In *Kirchner v. Wilson*, 251 Neb. 56, 554 N.W.2d 782 (1996), the Supreme Court found the apportionment instruction was warranted by the evidence because there was evidence that a

collision aggravated the preexisting degenerative and weakened condition of the plaintiff's lumbar spine but that the degree to which said preexisting condition was aggravated could not be determined. Similarly, in *David v. DeLeon, supra*, the Supreme Court concluded that the apportionment instruction was properly given where the defendant's expert witnesses agreed that a collision aggravated the plaintiff's preexisting injuries, but could not state what portion of the plaintiff's injuries was caused by the collision. The Supreme Court noted that the aggravation instruction prevented the result of a jury's finding that damages were proximately caused by the tortious act, but failing to award damages because it could not demarcate preexisting illnesses from new losses.

As we determined above, the evidence did not support instructing the jury on apportionment of damages, because Kelly had no preexisting injury to his back or left knee. Thus, there was no need for the jury to attempt to separate damages caused by a preexisting condition from those caused by the slip-and-fall accident. And the danger recognized in *David v. DeLeon, supra*, of the jury's failing to award damages because it could not demarcate preexisting illnesses from new losses, was not present here.

In addition, the jury was instructed that the appellees were also liable for any subsequent injury that was the proximate result of the original injury. In other words, the jury was instructed that the appellees were liable for the damages Kelly suffered as a result of the fall in the shower if the jury found that that fall was the proximate result of the slip and fall at the restaurant. As a result, the jury was properly instructed on the burden of proof regarding damages, and therefore, the district court did not err in refusing to give the proposed jury instruction.

The jury posed a question during deliberations, asking: "What does damages mean?" Kelly claims that this question "highlighted" the jury's confusion on the apportionment issue. See brief of appellant at 18. We disagree.

In response to the jury's question, the court directed it to the jury instruction which identified damages as the nature and extent of the injury, including whether the injury was temporary or permanent and whether any resulting disability was partial or total; the reasonable value of the earning capacity that Kelly was reasonably certain to lose in the future; and the physical pain and mental suffering Kelly had experienced and was reasonably certain to experience in the future. Due to reasons not involved in this appeal, damages did not include medical expenses or lost wages. Due to the absence of these two typical elements of damages, it would have been speculation on the part of the court to assume the basis for the jury's question was confusion regarding apportionment.

## CONCLUSION

We conclude that the jury instruction Kelly proposed on the aggravation of a preexisting condition was not warranted by the evidence presented at trial. In addition, the jury was properly instructed on the burden of proof regarding damages. Accordingly, the district court's refusal to give the proposed jury instruction was not erroneous, and we affirm the court's decision.

AFFIRMED.